IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 09-cv-02687-PAB-BNB

ERIC MARSHALL,

Plaintiff,

v.

KEVIN MILYARD, Warden,
MICHAEL NEGLEY, Captain,
TWEETEN, Lieutenant,
JOHN DOE, MORKERT, Lieutenant,
BELCHER, Sergeant,
JOHN CHAPDELINE, Associate Warden,
ARISTEDES W. ZAVARAS, Executive Director, and
LLOYD WAIDE, Major,

Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on the defendants' **Motion to Dismiss Plaintiff's Prisoner Complaint**

[Doc. #25, filed 02/19/2010] (the "Motion"). I respectfully RECOMMEND that the Motion be

GRANTED IN PART and DENIED IN PART.

## I.  STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v.

Kerner, 404 U.S. 519, 520-21 (1972). I cannot act as advocate for a *pro se* litigant, however,

who must comply with the fundamental requirements of the Federal Rules of Civil Procedure.

Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion to dismiss, the court must accept the plaintiff's well-pleaded

allegations as true and must construe all reasonable inferences in favor of the plaintiff. City of

<u>Los Angeles v. Preferred Communications, Inc.</u>, 476 U.S. 488, 493 (1986); <u>Mitchell v. King</u>, 537 F.2d 385, 386 (10th Cir. 1976). The complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief. <u>Alvarado v. KOB-TV, L.L.C.</u>, 493 F.3d 1210, 1215 n.2 (10th Cir. 2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974), overruled on other grounds by <u>Davis v. Scherer</u>, 468 U.S. 183 (1984).

## II. BACKGROUND

The plaintiff is incarcerated by the Colorado Department of Corrections ("DOC") at the Sterling Correctional Facility ("SCF"). He filed his Prisoner Complaint [Doc. #3] (the "Complaint") on November 17, 2009. At all times pertinent to the allegations of the Complaint, the defendants were employed by the DOC.

The Complaint contains the following allegations:

1. On May 24, 2009, defendant Lieutenant Tweeten forced the plaintiff to sign a Behavior Management Plan. *Complaint*, p. 4.[1]

2. On May 31, 2009, defendant Lieutenant Morkert[2] "activated" the Behavior Management Plan. <u>Id.</u> at p. 4. Morkert stated that the plaintiff had violated the DOC code of penal discipline by disobeying a lawful order; verbal abuse; bartering; and tampering with a security device. <u>Id.</u> at pp. 3, 4.

---

[1]I cite to the page numbers of the Complaint as they are assigned by the court's docketing system.

[2]Throughout the Complaint, the plaintiff refers to defendant Morkert as John Doe. However, he identifies John Doe as Morkert in the caption of the Complaint and in the text of the Complaint. *Complaint*, pp. 3, 9, 10. To avoid confusion, I refer to this defendant solely as Morkert.

3. The plaintiff did not receive notice of the alleged charges or a hearing on the charges. Id. at pp. 5, 8, 9. He did not receive the disciplinary sanctions which are required by the DOC and are imposed on all other inmates. Id. at p. 11.

4. Morkert removed the plaintiff from his cell and strip searched him. Morkert placed the plaintiff in an air conditioned holding cell where the temperature was below 30 degrees. The plaintiff was permitted to wear only his underwear. The cell had trash, bugs, and human feces on the toilet. The plaintiff was left in the cell for six hours. He injured his foot on the cold floor because he was without shoes and socks. Id. at p. 10.

5. The plaintiff was returned to his regular cell. Defendants Morkert and Belcher removed all of the plaintiff's property from the cell for seven days pursuant to an order from Tweeten. The property included the plaintiff's clothes, shoes, blankets, sheets, toilet paper, and hygiene items. The plaintiff was restricted to half portions of food at each meal. He was denied access to the law library; recreational time; personal and legal mail; and all of his legal papers. Female staff members were able to view him without his clothes. Id. at pp. 5, 6, 10, 15.

6. The plaintiff asked why he was being denied notice and a hearing prior to being disciplined, and Morkert replied that defendant Warden Milyard had issued the order. He was told by defendant Negley that Warden Milyard and Negley developed the Behavior Management Plan. Negley admitted to the plaintiff that his due process rights were being violated. He told the plaintiff that the Behavior Management Plan "was taken from a dog trainer when dogs don't obey." Id. at pp. 5, 9.

7. The plaintiff was subjected to these conditions from May 31, 2009, until June 3, 2009, under the authorization of defendants Negley and Morkert, and from June 8, 2009, until

June 11, 2009, under the authorization of defendant Milyard and "inforced [sic] by Michael

Negley and Mrs. Belcher." Id. at pp. 9, 10.

8. On August 8, 2009, defendant Waide conducted a reclassification hearing for the

plaintiff. Id. at pp. 6, 12. A case manager recommended that the plaintiff be moved to the

general population. Waide instead reclassified the plaintiff to Unit One, a segregation unit. Id.

at p. 12.

9. The plaintiff is currently in Unit One, Pod C. The unit is segregated from the general

population. The plaintiff is locked down for eighteen to twenty hours per day, and he is given

only one hour of recreation per day. He can go to the dining hall only every other day. He is

being denied access to educational programs; employment; and 12 days of earned time per

month. Id. at pp. 5, 6, 12.

10. Waide and Milyard took the following retaliatory actions against the plaintiff

because the plaintiff is suing them in a separate action:

    a. On February 20, 2009, Waide and Milyard had the plaintiff removed from

orientation and placed in administrative segregation;

    b. On March 2, 2009, Milyard overturned a captain's recommendation that the

plaintiff be removed from administrative segregation;

    c. Each week that the plaintiff was given a review, Waide would keep the

plaintiff in administrative segregation;

    d. Waide sent the plaintiff to Unit One, Pod C, in August 2009; and

e.   On September 21, 2009, Waide responded to the plaintiff's grievance by falsely stating that the plaintiff had DOC convictions for tattooing, assault, and involvement in a security threat group.  Id. at p. 14.

The Complaint asserts six claims for relief.  In Claim One, the plaintiff alleges that defendants Milyard, Negley, Morkert, Belcher, Tweeten, Chapdeline, and Zavaras violated his due process rights when they subjected him to multiple disciplinary actions under the Behavior Management Plan without first affording him notice and a hearing.  Id. at pp. 8-9.

Claim Two alleges that defendants Morkert, Negley, Milyard, and Belcher violated the plaintiff's Eighth Amendment rights when they subjected him to inhumane conditions under the Behavior Management Plan.  Id. at p. 10.

Claim Three alleges that defendant Milyard discriminated against the plaintiff because the plaintiff was disciplined differently than the other inmates.  Id. at p. 11.

In Claim Four, the plaintiff alleges that defendants Waide, Milyard, and Chapdeline violated his due process rights when they reclassified him to Unit One.  Id. at p. 12.

Claim Five alleges that defendants Waide and Milyard are retaliating against the plaintiff because the plaintiff previously named them as defendants in a separate law suit.  Id. at p. 14.

Claim Six alleges that defendants Milyard, Negley, Tweeten, Belcher, and Morkert deprived the plaintiff of his property without due process.[3]  Id. at p. 15.

---

[3]The Complaint is not a model of clarity.  To the extent the plaintiff attempts to bring claims other than those I have identified, those claims are unintelligible and will not be recognized.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

The plaintiff seeks compensatory and punitive damages and injunctive relief.  Id. at pp.

10, 12, 17.  The defendants seek dismissal of the Complaint on several grounds.

## III.  ANALYSIS

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State, . . . subjects, or causes
> to be subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

## A.  Eleventh Amendment Immunity

The defendants assert that they are entitled to Eleventh Amendment immunity insofar as

they are sued in their official capacities.  The Eleventh Amendment bars suits in federal courts

against unconsenting states by the state's own citizens and by citizens of another state.  Port

Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990).  Eleventh Amendment

immunity "constitutes a bar to the exercise of federal subject matter jurisdiction." Fent v. Okla.

Water Res. Bd., 235 F.3d 553, 559 (10th Cir. 2000) (emphasis omitted).  Eleventh Amendment

immunity applies to suits arising under 42 U.S.C. § 1983.  Quern v. Jordan, 440 U.S. 332, 345

(1979).

The Eleventh Amendment precludes federal jurisdiction over state officials acting in their

official capacities as to retroactive monetary relief, but not as to prospective injunctive relief.

Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 102-03,105-06 (1984).  The

defendants are employed by the Colorado Department of Corrections (the "DOC").  Complaint,

pp. 2-3.  The DOC is an agency or subdivision of the State of Colorado.  Consequently, the

Eleventh Amendment bars suit against the defendants in their official capacities for retroactive monetary relief. I respectfully RECOMMEND that the Motion be granted to the extent it seeks dismissal of the plaintiff's claims against the defendants in their official capacities for retroactive monetary relief.

### B. Qualified Immunity

The defendants assert that they are entitled to qualified immunity. Qualified immunity shields government officials sued in their individual capacities from liability for civil damages provided that their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In order for a right to be "clearly established" for purposes of assessing entitlement to qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

When analyzing the issue of qualified immunity, I consider two factors. I must determine whether the plaintiff has sufficiently alleged a violation of a statutory or constitutional right. In addition, I must inquire whether the right was clearly established at the time of the violation. Wilson v. Layne, 526 U.S. 603, 609 (1999); Butler v. City of Prairie Village, Kansas, 172 F.3d 736, 745 (10th Cir. 1999).[4]

_____

[4]The order in which I may consider these factors is discretionary. Pearson v. Callahan, __ U.S. __, __, 129 S. Ct. 808, 818 (2009); Manzanares v. Higdon, 2009 WL 2430643 *3 n.6 (10th Cir. Aug. 10, 2009).

### 1. Personal Participation of Defendants Zavaras and Chapdelaine

The defendants assert that Zavaras and Chapdeline cannot be held liable for the alleged constitutional violations because the plaintiff has failed to allege that these defendants personally participated in the alleged constitutional violations. An individual cannot be held liable in a section 1983 action unless he caused or participated in an alleged constitutional violation. McKee v. Heggy, 703 F.2d 479, 483 (10th Cir. 1983). Respondeat superior is not within the purview of section 1983 liability. Id. In order for a supervisor to be liable under section 1983, there must exist a causal connection or an affirmative link "between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." Butler v. City of Norman, 992 F.2d 1053, 1055 (10thCir. 1993); see also Rizzo v. Goode, 423 U.S. 362, 371 (1976). Without a showing of direct responsibility for the alleged violations, liability will not be imposed on a supervisory official. Id.

The plaintiff alleges that defendant Zavaras was contacted about the alleged constitutional violations and did not address them. *Complaint*, pp. 7, 9. The plaintiff further alleges that Zavaras is liable because he is the Executive Director of the DOC. Id. at p. 7.

The plaintiff alleges that defendant Chapdeline is liable because he "is the administrative head that claimed there is no due process issue on putting this plaintiff in a segregated unit." Id. at p. 7. He further alleges that Chapdeline "was addressed in person by this plaintiff on 6/22/09 on all of the issues due process violations, cruel and unusual punishment." Id. at p. 9.

"The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008) (internal quotations and citation omitted). If the complaint's allegations "are so

general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." Id. (internal quotations and citation omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." Id. This is especially true in cases, like this one, where the defense of qualified immunity has been asserted. Id. at 1248-49.

The plaintiff's allegations are insufficient to state a plausible claim that Zavaras and Chapdeline were directly responsible for the alleged constitutional violations. The Motion should be granted to the extent it seeks dismissal of all claims against Zavaras and Chapdeline.

### 2. Claims One, Four, and Six

Claim One alleges that defendants Milyard, Negley, Morkert, Belcher, Tweeten, Chapdeline, and Zavaras violated the plaintiff's due process rights when, pursuant to the Behavior Management Plan, they subjected him to disciplinary action for violations of the Code of Penal Discipline without first affording him notice and a hearing. *Complaint*, pp. 8-9. In Claim Four, the plaintiff alleges that defendants Waide, Milyard, and Chapdeline violated his due process rights when they reclassified him to segregation in Unit One, Pod C. Id. at p. 12. Claim Six alleges that defendants Milyard, Negley, Tweeten, Belcher, and Morkert deprived the plaintiff of his property without due process. Id. at p. 15.

The defendants argue that the plaintiff's due process claims are barred under Heck v. Humphrey, 512 U.S. 477 (1994), because the plaintiff has not demonstrated that he received a "favorable termination" of his administrative segregation proceedings. *Motion*, pp. 8-9.

Heck v. Humphrey holds that "[w]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id. at 487. This "favorable termination" requirement extends to section 1983 claims stemming from prison disciplinary hearings that deprive an inmate of good time credits he had previously earned, because the deprivation of accrued good time credits affects the inmate's sentence. Edwards v. Balisok, 520 U.S. 641 (1997). "[T]he incarceration that matters under Heck is the incarceration ordered by the original judgment of conviction, not special disciplinary confinement for the infraction of prison rules." Muhammad v. Close, 540 U.S. 749, 752 n. 1, (2004).

The plaintiff states that, after a "reclassification hearing," he was placed in a segregation unit where he is "denied the 12 days a month for earn time." Id. at p. 12. The plaintiff does not allege that the defendants deprived him of earned time that had already accrued; instead, he alleges that the defendants decreased or eliminated his potential to accrue additional earned time while in segregation. Under Colorado law, earned time is awarded on a discretionary basis for "consistent progress" in certain programs and behavioral areas. C.R.S. § 17-22.5-405(1). Therefore, "the disciplinary action [the plaintiff] suffered temporarily diminished the rate at which he accrued earned-time credits, but he has not shown that this inevitably affected the duration of his sentence; at the most he has shown that it *might* have affected the length of his sentence." York v. Addison, 44 Fed.Appx. 296, 297 (10th Cir. 2002). Therefore, I cannot conclude that entry of judgment in this case would necessarily imply the invalidity of the

plaintiff's sentence in violation of <u>Heck</u>.  <u>See</u> <u>Julien v. Milyard</u>, No. 07-cv-02176-REB-KLM,

2008 WL 5663941 at *4-*5 (D.Colo. Sept. 15, 2008).  The Motion should be denied insofar as it

seeks dismissal of Claims One, Four, and Six pursuant to <u>Heck</u>.

      The defendants next argue that Claims One, Four, and Six should be dismissed because

the plaintiff has not identified a constitutionally protected liberty interest.  *Motion*, pp. 9-11.  The

Fourteenth Amendment guarantees due process when a person may be deprived of life, liberty,

or property.  U.S. Const. amend. XIV, § 1.  The Due Process Clause "shields from arbitrary or

capricious deprivation those facets of a convicted criminal's existence that qualify as 'liberty

interests.'"  <u>Harper v. Young</u>, 64 F.3d 563, 564 (10th Cir. 1995), *aff'd*, 520 U.S. 143 (1997).

Thus, before determining whether a plaintiff's procedural or substantive due process rights have

been violated, the court must determine whether the plaintiff has a liberty interest.

      Liberty interests protected by the Fourteenth Amendment may arise either from the Due

Process Clause itself or from state law.  <u>Hewitt v. Helms</u>, 459 U.S. 460, 466 (1983), *overruled in*

*part on other grounds by* <u>Sandin v. Conner</u>, 515 U.S. 472 (1995).  "[T]he Constitution itself does

not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement."

<u>Wilkinson v. Austin</u>, 545 U.S. 209, 221 (2005).  Nor does it create a liberty interest in earned

time credits, <u>Wolff v. McDonnell</u>, 418 U.S. 539, 557 (1974); an inmate's prison employment,

<u>Ingram v. Papalia</u>, 804 F.2d 595, 596 (10th Cir. 1986); or a particular custody classification or

reclassification.  <u>Montanye v. Haymes</u>, 427 U.S. 236 (1976);  <u>Levoy v. Mills</u>, 788 F.2d 1437,

1440 (10th Cir. 1986).

      State-created liberty interests are found only under limited circumstances:

          States may under certain circumstances create liberty interests
          which are protected by the Due Process Clause.  But these interests

> will be generally limited to freedom from restraint which, while
> not exceeding the sentence in such an unexpected manner as to
> give rise to protection by the Due Process Clause of its own force,
> [] nonetheless imposes atypical and significant hardship on the
> inmate in relation to the ordinary incidents of prison life.

Sandin, 515 U.S. at 483-84.[5]

The plaintiff does not state the nature of his liberty interest with any specificity; he asserts generally that he has a liberty interest in being free from the disciplinary actions that were taken against him. *Motion: Response to Defendants['] Motion to Dismiss* [Doc. #36] (the "Response"), p. 2.

Colorado law has not created a liberty interest in earned time credits. Section 17-22.5-405(1), C.R.S., provides that "[e]arned time, not to exceed ten days for each month of incarceration or parole, may be deducted from the inmate's sentence...." Thus, the decision to grant or deny good time and earned time credit lies within the discretion of the Department of Corrections, and the DOC's failure to award good time or earned time credits does not result in an atypical and significant hardship in relation to the ordinary incidents of prison life. In addition, under Colorado law, earned time credits are applied to determine parole eligibility, not to determine a mandatory release date. Meyers v. Price, 842 P.2d 229, 231-32 (Colo. 1992). Therefore, the DOC's decision not to award good and earned time credits, or to withdraw good

---

[5]In Sandin, the Court eschewed the methodology it had previously applied to determine the existence of a liberty interest. The prior methodology required examination of prison regulations "to determine whether mandatory language and substantive predicates created an enforceable expectation that the State would produce a particular outcome with respect to the prisoner's conditions of confinement." 515 U.S. at 480-81. The Court instead returned to the due process principles that were established and applied in Meachum v. Fano, 427 U.S. 215 (1976) and Wolff v. McDonnell, 418 U.S. 539 (1974). Those principles focus on the nature of the deprivation instead of the language of a particular regulation. Sandin, 515 U.S. at 481.

and earned time credits, cannot implicate a liberty interest.  <u>Greenholtz v. Inmates of Nebraska</u>

<u>Penal and Correctional Complex</u>, 443 U.S. 1, 7 (1979) (stating that "[t]here is no constitutional

or inherent right of a convicted person to be conditionally released before the expiration of a

valid sentence").

Similarly, "Colorado law does not create a protected property or liberty interest to either

[an inmate's] employment in any particular job or continued employment in any particular job."

<u>Ingram</u>, 804 F.2d at 597.

Insofar as the plaintiff is asserting that he has a liberty interest in being free from

confinement in segregation, the conditions and duration of disciplinary segregation can implicate

a liberty interest if they impose an atypical and significant hardship in relation to the ordinary

incidents of prison life.  The Supreme Court has found no liberty interest where an inmate's

confinement in disciplinary segregation "with insignificant exceptions, mirrored those conditions

imposed upon inmates in administrative segregation and protective custody" and "did not exceed

similar, but totally discretionary, confinement in either duration or degree of restriction" in

comparison with other inmates.  <u>Sandin</u>, 515 U.S. at 486.

In Claim One, the plaintiff alleges that under the Behavior Management Plan, he was

placed in a cell where the temperature was below 30 degrees; he was permitted to wear only his

underwear; the cell had trash, bugs, and human feces on the toilet; he was left in the cell for six

hours; he injured his foot on the cold floor because he was without shoes and socks; and he was

subjected to these conditions on two occasions for four days each.  *Complaint*, pp. 9-10.  He

further alleges that when he returned to his regular cell, his clothes, shoes, blankets, sheets, toilet

paper, and hygiene items had been removed.  Female guards were able to view him without his

clothes; he was restricted to half portions of food at each meal; and he was denied access to the law library, recreational time, personal and legal mail, and all of his legal papers.  <u>Id.</u> at pp. 5, 6, 10, 15.   The plaintiff alleges that he was told these measures were imposed because he violated the DOC code of penal discipline, but he was not provided with a due process hearing prior to imposition of the conditions.

These allegations are sufficient to state a claim for cruel and unusual punishment under the Eighth Amendment.  It follows that they also are sufficient to demonstrate that the conditions imposed an atypical and significant hardship on the plaintiff in relation to the ordinary incidents of prison life.  The plaintiff has, therefore, set forth specific allegations sufficient to demonstrate that he had a constitutionally protected liberty interest in avoiding the harsh conditions of confinement alleged in Claim One.  The plaintiff's right to procedural due process prior to implementation of measures which deprive him of a liberty interest were clearly established prior to 2009.  <u>Wilkinson</u>, 545 U.S. 209; <u>Sandin</u>, 515 U.S. 472; <u>Wolff</u>, 418 U.S. 539.  Accordingly, the Motion should be denied to the extent it seeks dismissal of Claim One.

In Claim Four, the plaintiff alleges that he was reclassified to disciplinary segregation in Unit One in violation of his due process rights.  *Complaint*, p. 13.  The Complaint does not contain any specific factual allegations to show that the conditions or duration of confinement in Unit One imposed an atypical and significant hardship in relation to ordinary incidents of prison life.[6]  Even if the plaintiff had sufficiently alleged the existence of a liberty interest, he does not

---

[6]Although the plaintiff alleges that he was "denied the rights as all other inmates in general population" while in Unit One, <u>id.</u> at p. 12, the Complaint does not contain any factual allegations to show that his placement in Unit One resulted in conditions meaningfully different from the conditions imposed by other types of segregation.  To the contrary, he alleges that he was locked down for eighteen to twenty hours per day; he was given one hour of recreation per

allege any specific facts regarding the process he claims was denied.  He summarily claims that he was placed into Unit One segregation without a due process hearing, yet he states he was given a hearing prior to being reclassified to confinement in Unit One.  Id. at pp. 6, 12.  The plaintiff must allege specific facts that would plausibly, not speculatively, state a claim for relief.  Robbins, 519 F.3d at 1247.  The plaintiff has failed to allege facts demonstrating that he has a liberty interest in being free from confinement in Unit One or that he was denied sufficient process prior to placement in Unit One.  Accordingly, the Motion should be granted insofar as it seeks dismissal of Claim Four.

In Claim Six, the plaintiff alleges that defendants Milyard, Negley, Tweeten, Belcher, and Morkert deprived the plaintiff of his property without due process.  The Tenth Circuit Court of Appeals has recognized that taking an inmate's property does not implicate the due process clause where an adequate state post-deprivation remedy is available, and that Colorado has provided such a remedy in section 24-10-106(1)(b).  Freeman v. Dept. of Corrections, 949 F.2d 360, 361-62 (10th Cir. 1991).  Accordingly, the Motion should be granted insofar as it seeks dismissal of Claim Six.

### 3.  Claim Two

Claim Two alleges that defendants Morkert, Negley, Milyard, and Belcher violated the plaintiff's Eighth Amendment rights when they subjected him to inhumane conditions under the Behavior Management Plan.  *Complaint*, p. 10.  The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.  The Eighth Amendment prohibition of cruel

---

day; and he could eat in the dining hall every other day.

and unusual punishment requires prison officials to provide humane conditions of confinement by ensuring that inmates receive adequate food, clothing, shelter, and medical care. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (quotations and citations omitted).

A prisoner claiming an Eighth Amendment violation must establish both objectively and subjectively that particular conditions of confinement constitute cruel and unusual punishment. <u>Wilson v. Seiter</u>, 501 U.S. 294, 297-298 (1991). To satisfy the objective component, a plaintiff must allege a deprivation which objectively is "sufficiently serious" to form an Eighth Amendment violation. <u>Id</u>. at 298. To satisfy the subjective component, plaintiffs must demonstrate that the prison official was "deliberately indifferent" to a substantial risk of serious harm. <u>Farmer</u>, 511 U.S. at 834.

The plaintiff alleges that his Eighth Amendment right to be free from cruel and unusual punishment was violated when he was placed in a cell where the temperature was below 30 degrees; he was permitted to wear only his underwear; the cell had trash, bugs, and human feces on the toilet; he was left in the cell for six hours; he injured his foot on the cold floor because he was without shoes and socks; and he was subjected to these conditions from May 31, 2009, until June 3, 2009, and from June 8, 2009, until June 11, 2009. *Complaint*, pp. 9-10. He further alleges that when he returned to his regular cell, his clothes, shoes, blankets, sheets, toilet paper, and hygiene items had been removed. Female guards were able to view him without his clothes; he was restricted to half portions of food at each meal, and he was denied access to the law library, recreational time, personal and legal mail, and all of his legal papers. <u>Id.</u> at pp. 5, 6, 10, 15. Finally, the plaintiff alleges that defendants Morkert, Negley, Milyard, and Belcher purposely subjected him to these conditions in an attempt to modify his behavior.

The state must provide an inmate with "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities (i.e., hot and cold water, light, heat, plumbing." Ramos v. Lamm, 639 F.2d 559, 568 (10th Cir. 1981).   Inmates have a right to adequate clothing to protect them from extreme cold.  Dixon v. Godinez, 114 F.3d 640, 642 (7th Cir. 1997); Maxwell v. Mason, 668 F.2d 361, 365 (8th Cir. 1981).   See also Ramos, 639 F.2d at 568.  "Not surprisingly, human waste has been considered particularly offensive so that courts have been especially cautious about condoning conditions that include an inmate's proximity to it." McBride v. Deer, 240 F.3d 1287, 1292 (10th Cir. 2001) (internal quotations and citation omitted). "An inquiry into conditions of confinement by necessity relies on the particular facts of each situation; the circumstances, nature, and duration of the challenged conditions must be carefully considered."  DeSpain v. Uphoff, 264 F.3d 965, 974 (10th Cir. 2001) (internal quotations and citation omitted).

The plaintiff has alleged conditions sufficient to survive a motion to dismiss.  In addition, he has alleged sufficient facts to show that the defendants knew of and disregarded an excessive risk to his health.  The plaintiff's Eighth Amendment rights were clearly established prior to the imposition of the conditions alleged in Claim One.  Farmer, 511 U.S. 825.  Accordingly, the Motion should be denied insofar as it seeks dismissal of Claim Two.

**4.  Claim Three**

Claim Three alleges that defendant Milyard discriminated against the plaintiff because the plaintiff was disciplined differently than the other inmates.  *Complaint*, p. 11.  "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that

all persons similarly situated should be treated alike." <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985) (quotations and citation omitted). The Complaint does not contain any factual allegations to show that the plaintiff was similarly situated to the inmates who received different disciplinary sanctions. The Motion should be granted to the extent as it seeks dismissal of Claim Three.

### 5. Claim Five

In Claim Five, the plaintiff alleges that defendants Waide and Milyard retaliated against him because he previously named them as defendants in a separate law suit. *Complaint*, p. 14.

"Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his rights to access the courts." <u>Smith v. Mashner</u>, 899 F.2d 940, 947 (10th Cir. 1990). "This principle applies even if the action taken in retaliation would be otherwise permissible."[7] <u>Id.</u> at 948. An inmate, however, is not "inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he is engaged in protected activity." <u>Peterson v. Shanks</u>, 149 F.3d 1140, 1144 (10th Cir. 1998). Therefore, to prevail on a claim of retaliation a plaintiff "must prove that but for the retaliatory motive, the incidents to which he refers . . . would not have taken place." <u>Id.</u> (quotations and citation omitted). "An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." <u>Id.</u> (quotations and citation omitted) (emphasis in original).

---

[7]Therefore, to the extent the defendants argue for dismissal of the retaliation claim because the Complaint contains allegations which justify the the disciplinary actions, *Motion*, pp. 12-13, the argument is without merit.

The presentation of circumstantial evidence such as temporal proximity, a chronology of events, or suspicious timing may be sufficient to support allegations of retaliation. See Smith, 899 F.2d at 949 (holding that the inmate sufficiently supported retaliation claim with "only means available to him--circumstantial evidence of the suspicious timing of his discipline, coincidental transfers of his witnesses and assistants"); McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979) (holding that the plaintiff's allegations of a "chronology of events" may be read as "providing some support for an inference of retaliation"); Harris v. Fleming, 839 F.2d 1232, 1236-38 (7th Cir. 1988) (finding that the pattern and timing of firings and cell transfers were sufficient to establish a question of retaliation).

The Complaint does not contain any allegations to show when the plaintiff previously sued defendants Waide and Milyard. However, the court's docketing system shows that the plaintiff has filed ten cases in this court.[8] Case No. 08-cv-00299-PAB-BNB names Waide and Milyard as defendants and was filed on February 6, 2008.

The plaintiff alleges that on February 20, 2009, Waide and Milyard had the plaintiff removed from orientation and placed in administrative segregation; on March 2, 2009, Milyard overturned a captain's recommendation that the plaintiff be removed from administrative segregation; each week that the plaintiff was given a review, Waide would keep the plaintiff in administrative segregation; Waide sent the plaintiff to Unit One, Pod C in August 2009; and on September 21, 2009, Waide responded to the plaintiff's grievance by falsely stating that the

---

[8]I may take judicial notice of the cases filed by the plaintiff as reflected by the court's docketing system. Fed.R.Evid. 201.

19

plaintiff had DOC convictions for tattooing, assault, and involvement in a security threat group.

Id.

The defendants' alleged retaliatory actions did not begin until almost one year after the plaintiff's previous action was filed. Consequently, the plaintiff's allegations are not sufficient to create an inference of suspicious timing. The Complaint does not contain any other factual allegations to support an inference that the defendants' actions were retaliatory. The Motion should be granted insofar as it seeks dismissal of Claim Five for failure to state a claim upon which relief can be granted.

### C. Failure to Allege Physical Injury

The defendants assert that the plaintiff is not entitled to declaratory relief or monetary damages because he has failed to allege physical injury as required by the Prisoner Litigation Reform Act ("PLRA"). The PLRA provides in pertinent part:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).

Section 1997e(e) applies regardless of the nature of the underlying substantive violation asserted. Searles v. Van Bebber, 251 F.3d 869, 876 (10th Cir 2001) (applying section 1997e(e) to the plaintiff's First Amendment claim for free exercise of religion). Although section 1997e(e) bars recovery of compensatory damages for failure to allege physical injury, it does not bar recovery of punitive damages or declaratory or injunctive relief. Id., at 881; Perkins v. Kansas Dept. of Corrections, 165 F.3d 803, 808 (10th Cir. 1999).

The plaintiff alleges that he injured his foot on the cold floor after he was placed in the air conditioned cell pursuant to the Behavior Management Plan. This injury pertains to the remaining claims (Claims One and Two). Therefore, compensatory damages should not be barred with respect to those claims.

## IV.  CONCLUSION

I respectfully RECOMMEND that the Motion be GRANTED IN PART and DENIED IN PART as follows:

1.  GRANTED to the extent it seeks dismissal of the plaintiff's claims against the defendants in their official capacities for retroactive monetary relief;

2.  GRANTED to the extent it seeks dismissal of all claims against defendants Zavaras and Chapdeline;

3.  GRANTED to the extent it seeks dismissal of Claims Three, Four, Five, and Six;

4.  DENIED insofar as it seeks dismissal of Claims One and Two; and

5.  DENIED to the extent it seeks dismissal of the plaintiff's claims for compensatory damages under claims One and Two.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue

for *de novo* review by the district court or for appellate review.  <u>United States v. One Parcel of</u>

<u>Real Property</u>, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated September 2, 2010.

<div style="margin-left:50%">

BY THE COURT:

 s/ Boyd N. Boland          
United States Magistrate Judge

</div>